IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STACEY SULADIE,<br>       Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 05-1279<br>) |
| COMMISSIONER OF<br>SOCIAL SECURITY,<br>       Defendant. | )<br>)<br>)<br>) |

REPORT AND RECOMMENDATION

I. Recommendation

It is respectfully recommended that the cross motions for summary judgment (Docket Nos. 8 and 13) be denied without prejudice and that the matter be remanded to the Commissioner for further development of the extent of the plaintiff's mental condition and whether or not it prevents her from being gainfully employed.

II. Report

Presently before the Court for disposition are cross motions for summary judgment.

On September 19, 2005, Stacey Suladie by her counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing her claim for Supplemental Security Income benefits under Sections 1614 and 1631 of the Act, as amended, 42 U.S.C. §1381 cf.

The instant application for Supplemental Security Income Benefits was filed on February 21, 2003 (R.65-67). On May 20, 2003, the plaintiff requested a hearing (R.49) and

pursuant to that request a hearing was held on May 26, 2004 (R.319-354).  In a decision filed on August 27, 2004, an Administrative Law Judge denied benefits (R.13-26), and on October 27, 2004, the plaintiff requested reconsideration of that determination (R.12).  On July 15, 2005, the Appeals Council affirmed the prior determination (R.8-10).  The instant complaint was filed on September 19, 2005.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act.  Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)." Richardson v. Perales, supra., at page 401; Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

The purpose of the Supplemental Security Income Program is to provide additional income to persons of limited resources who are aged, blind or disabled persons. 42 U.S.C. §1381; Chalmers v. Shalala, 23 F. 3d 752 (3d Cir. 1994).  To be eligible for such benefits,

an individual's income must not exceed a certain established maximum and he/she must fulfill certain eligibility requirements.

> As set forth in 20 C.F.R. § 416.905(a) disability is defined as:
>
> the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
>
> In addition, a person will be considered disabled if he/she is
>
> (a) ... permanently and totally disabled as defined under a State plan approved under title XIV or XVI of the Social Security Act, as in effect for October 1972; (b) ... received aid under the State plan ... for the month of December 1973 and for at least one month prior to July 1973; and (c) ... continue[s] to be disabled as defined under the State plan.

20 C.F.R. § 416.907.

> A physical or mental impairment is defined in 20 C.F.R. §416.908 as an:
>
> impairment [which] result[s] from anatomical, physiological, or psychological abnormalities which [are demonstrated] by medically acceptable clinical and laboratory diagnostic techniques.
>
> For purposes of determining whether or not the plaintiff met the eligibility

requirements, certain evidence was considered by the Commissioner.

At the hearing held on May 26, 2004 (R.319-354), the plaintiff appeared with counsel (R.321) and testified that she was born on October 7, 1969 (R.322); that she graduated from high school where she received restaurant training (R.322); that she worked as a pharmacy cashier and shelf stocker (R.324-325); that she worked as a waitress (R.325); that all of her jobs were for a short term because of her depression (R.345) and that she is receiving public assistance (R.326).

The plaintiff also testified that she is an alcoholic but stopped drinking in August 2002 (R.326,330); that she takes medication for a bi-polar and obsessive/compulsive disorder (R.331-334); that she attends weekly therapy sessions (R.335); that she can sit or stand for about fifteen minutes (R.339); that she can lift ten to fifteen pounds (R.340, 348); that she also has eczema for which she uses an ointment (R.344); that she sleeps when she is depressed (R.345) and that she experiences panic attacks (R.347).

At the hearing a vocational expert was called upon to testify (R.349-352). He described the plaintiff's prior work as light unskilled work (R.349). The witness was asked to assume an individual who could perform medium work involving short simple instructions, and avoid travel or interaction with the public, and responded that there were a wide range of duties such an individual could perform (R.349-350). However, if the individual was limited in ability to walk and stand, the witness testified that there were a wide range of sedentary jobs such a person could perform (R.350). However, if the individual had to be "off task" for an hour during the work period, the witness testified such an individual could not be employed (R.351).

In addition, certain other evidence was considered.

In an August 15, 2000 psychiatric evaluation, Dr. Maximo Lockward diagnosed depression and alcohol dependence. Further treatment was recommended (R.277-280).

The plaintiff was treated at the Human Services Center between April 26, 1996 and August 22, 2000 for left wrist and back pain, headaches and dizziness (R.118-126).

The records of the Human Services Center for the period from August 9, 2000 through May 21, 2001 reveal treatment for depression and alcohol dependence. She was treated with medication and counseling (R.281-296).

4

The plaintiff was treated at the St. Francis Hospital Emergency Room on February 1, 2002 for a minimally displaced fifth toe fracture. She was provided with medication and follow-up care was recommended (R.192-200).

The plaintiff was treated at the St. Francis Hospital Emergency Room on August 13, 2002 for an ankle sprain. She was provided with medication and follow-up care was recommended. No fracture or dislocation was observed (R.201-209).

The plaintiff was treated by Dr. Hany S. Rezk between August 14, 2001 and January 15, 2003 for a lower back lump, ear infection and headaches (R.127-137).

Medical radiology reports for the period from April 11, 1999 through February 3, 2003 revealed sinusitis and a normal thoracic and lumbosacral spine (R.138-145).

In a report of a psychiatric evaluation conducted on February 13, 2002 a history of alcohol abuse and a dysthymic disorder were noted (R.146-152).

The plaintiff received physical therapy at the Keystone Rehabilitation System between February 27, 2003 and March 6, 2003 for mid-thoracic back pain (R.153-156).

In a report of an examination conducted on April 5, 2003, Dr. Hany Rezk diagnosed peripheral neuropathy related to alcohol abuse, depression and gastro-esophageal reflux disease. It was noted that the plaintiff could lift and carry without limitation, stand or walk for three to four hours and sit without limitation (R.157-163).

In a residual functional mental assessment completed on April 9, 2003 limitation was said to be slight to moderate (R.164-165).

In a psychiatric review completed on April 9, 2003, depression and alcohol abuse are noted. These were said to be mild to moderately limiting (R.166-180).

After reviewing the medical evidence and in a residual functional capacity assessment completed on April 15, 2003, it is noted that the plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, and stand, walk or sit for about six hours (R.181-190).

The plaintiff was treated at the Irene Stacy Community Health Center between January 9, 2003 and May 29, 2003 for a dysthymic disorder. Moderate restrictions in activities of daily living were noted (R.210-215).

In a psychiatric assessment prepared on June 10, 2003, it was noted that the plaintiff would not report to work due to depression (R.216-220).

Neurological records for the period from June 25, 2003 through October 22, 2003 contain a diagnosis of paraesthesias and possible neuropathy secondary to alcoholism (R.221-229).

A right ovarian cyst was detected on October 22, 2003 (R.234).

The plaintiff was treated with medication ordered by the Irene Stacy Community Mental Health Center between April 22, 2003 and November 24, 2003 (R.230-233).

In a report dated December 3, 2003, Dr. Elizabeth A. Piccione noted complaints of leg pain and hip numbness of unknown etiology (R.235-236).

The plaintiff was treated by Dr. Hany Rezk between July 15, 2002 and December 8, 2003 for headaches, leg numbness, sinus congestion, a back cyst which was excised and eczema (R.243-251).

In a report of a psychiatric evaluation conducted on January 5, 2004, Dr. Shoukry Matta diagnosed an obsessive/compulsive disorder, possible bipolar disorder and a history of alcohol dependence. The doctor changer her medications (R.237-239).

A report from the Human Services Center dated February 20, 2004 contains diagnoses of depression and mood swings (R.267-276).

In a neurological report dated March 17, 2004, Dr. Ram Tata diagnosed probable restless leg syndrome. Medication was provided (R.297-298).

A physical capacity evaluation completed on March 17, 2004 indicated that the plaintiff could sit for four hours, stand for two to four hours, lay down for two hours and lift up to fifty pounds (R.240-242).

The plaintiff was treated by Dr. Sunil K. Mehta between February 10, 2004 and April 22, 2004 for leg pain, difficulty swallowing and distended stomach (R.299-305).

In a psychiatric summary of treatment rendered between January 5, 2004 and May 4, 2005, Dr. Shoukry Matta diagnosed an obsessive/compulsive disorder and a history of alcoholism. The report concluded that the plaintiff was unemployable due to panic attacks, difficulty staying on task, mood swings, difficulty with stress and new situations, and difficulty being around others (R.306-316).

In a psychological evaluation report completed on May 17, 2004 and covering six counseling sessions, it was noted that the plaintiff could not sustain employment due to chronic mood swings, frequent panic and anxiety attacks and chronic depression (R.252-266).

.

Based on the evidence presented, the Commissioner determined:

The claimant is 34 years old with a high school education. She has worked as a cashier/stock person in a thrift store, waitress, and dietary aide. She alleges that she became disabled on October 1, 2002, due to back problems, nerve damage to the leg, alcoholism, mental problems, and acid reflux.

* * *

The claimant admitted she was an alcoholic but that she stopped drinking, and I find that this impairment is not material currently. The claimant apparently has been diagnosed with eczema, but she has had improvement on steroid cream... The evidence also shows a diagnosis of GERD ... that is controlled on Prilosec. The claimant reported back pain, but diagnostic studies in March 2002 were normal. I find the impairments to be not severe as the record shows that they have no more than a minimal effect on the claimant's ability to perform work-related functions.

* * *

I have evaluated the claimant's bipolar disorder, obsessive compulsive disorder, and history of substance abuse ... the claimant does not exhibit a marked or equivalent limitation in two (in fact, in any) of the four categories set out in part B of listings ... which are also the measure of severity... I find that the claimant has no more than a mild restriction on her activities of daily living attributable to a mental impairment... The claimant's depression and stress reasonably may be expected to limit her to simple, routine, repetitious tasks ...

I find that the claimant has the residual functional capacity to perform work that does not require: exertion above the light level; or more than simple, routine, repetitious tasks with only short simple instructions, and that avoids interaction with the general public, job changes, intensive supervision, decision making, and travel to unfamiliar places.

* * *

Based on the testimony of the vocational expert, I conclude that considering the claimant's age, education, work experience, and residual functional capacity, she is capable of making a successful

>adjustment to work that exists in significant numbers in the national economy. I find her "not disabled" within the framework of medical-vocational rule 202.20... (R.16-25).

There is no question that the medical evidence of record demonstrates that the plaintiff does not suffer from a severe physical disability which prevents her from engaging in gainful employment. However, she does suffer from mental impairments which may or may not be disabling. The record contains some reports that the plaintiff's mental health conditions are disabling (R.216-220, 253, 308). While there is some question as to the strength of these determinations and the support upon which they rely, nevertheless, we cannot at this juncture determine whether or not the Commissioner's conclusion that they are not disabling is supported or contradicted by the record. For this reason, further development limited to the plaintiff's residual mental capacity is necessary.

Summary judgment is appropriate where there are no material factual issues in dispute and the movant is entitled to judgment as a matter of law. Orsatti v. New Jersey, 71 F.3d 480 (3d Cir. 1995). In the instant case there exists a question of whether or not the findings of the Commissioner are supported by substantial evidence. For this reason, it is recommended that the cross motions for summary judgment (Docket Nos. 8 and 13) be denied without prejudice and that the matter be remanded to the Commissioner for further development of the extent of the plaintiff's mental condition and whether or not it prevents her from being gainfully employed.

Within ten days after being served with a copy, any party may serve and file written objections to the report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

                    Respectfully submitted,

                    ROBERT C. MITCHELL,
                    United States Magistrate Judge

Date: March 20, 2006